Jeffrey E. Goldman, Esq.
THE LAW OFFICES OF JEFFREY E. GOLDMAN
260 Madison Ave., 15th Floor.
New York, NY 10016
Phone: 212-983-8999
Jeff@JGoldmanlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SUZAN DOGAN,** **Plaintiff,** | |
| **- against -** | **COMPLAINT** |
| **AKSARAY, INC. d/b/a, AKSARAY TURKISH CAFÉ AND RESTAURANT, BAKI GUVEN, and YUSUF ALBARDAK,** | **DOCKET NO. 24-6362** |
| **Defendants.** | **Jury Trial Requested** |

Suzan Dogan ("Plaintiff"), by her attorneys, The Law Office of Jeffrey E. Goldman allege as follows:

## NATURE OF THE CASE

1. Plaintiff worked as a server in a restaurant in Brooklyn called Aksaray which is owned by Baki Guven and Yusuf Albardak.

2. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA") and the New York Labor Law § 190 *et seq*. ("NYLL") to recover unpaid minimum wages, unlawfully misappropriated tips, and other monies.

3. Defendants have failed to compensate plaintiff at the federal and state minimum wage, and unlawfully misappropriated a portion of their tips.

4. Plaintiff seeks relief against defendants' unlawful actions, return of the tip credit (i.e. the difference between the full applicable minimum wage and the hourly wage defendants actually paid to their food service workers), return of the misappropriated tips, return of unpaid

wages, liquidated damages, interest, and attorneys' fees and costs as permitted in accordance with the FLSA and NYLL.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 and 1337, and has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1331, as the location of Aksaray, Inc, the restaurant where plaintiff worked, is in the Eastern District of New York.

**PARTIES**

7. Plaintiff Dogan, a resident of New York State, was employed by defendants from August of 2019 through June 14, 2024. Dogan was employed as a server. Throughout her employment, she worked 9 hours each day from 11 pm to 8 am. She worked 5 or 6 days a week. She sometimes worked 7 days a week. She was never paid the 15% gratuity added to checks. She was required to share her cash tips with cook/grill person, bread person and dishwasher.

8. Plaintiff was defendants' employee within the meaning of the FLSA and NYLL.

9. Defendant Aksaray, Inc. is a New York Corporation that owns and operates Aksaray, a restaurant located at 1618 East 16th Street, Brooklyn, NY 11229.

10. Upon information and belief, defendants jointly and individually have an annual gross volume of sales in excess of $500,000.00.

11. Defendant Baki Guven ("Guven") is an owner and operator of Aksaray and has been an active manager with authority to control the pay practices and employment policies.

12. Defendant Yusuf Albardak ("Albardak") is an owner and operator of Aksaray and has been an active manager with authority to control the pay practices and employment policies.

13. Guven and Albardak control the employees' records and rate of pay.

14. Guven and Albardak are in the business on a regular basis.

15. Guven and Albardak set the rate of pay and control the plaintiff's schedule.

16. Guven and Albardak hired and fired the plaintiff.

17. In August of 2019, plaintiff was hired by Guven.

18. On June 14, 2024, plaintiff was fired by Guven.

19. Plaintiff complained to Guven and Albardak about the tipping practice of the restaurant.

20. Specifically, the restaurant added a 15% gratuity to each check and kept the entire amount without sharing it with the service staff. Exhibit 1

21. Guven signed the plaintiff's paycheck. Exhibit 2.

22. Defendant Guven and Albardak are at the restaurant every day managing the restaurant.

23. The restaurant is open 24 hours a day and operates two shifts of employees. One is from 11 am to 11 pm and the second shift is from 11 pm to 8 am in the morning.

24. At all relevant times, corporate defendants have been and continue to be an "employer" engaged in "commerce" and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

25. Defendants are engaged in interstate commerce, as numerous items that are used in the restaurant on a daily basis are goods purchased outside of New York.

26. For example, Aksaray sells products like lentil soup. Lentils used in the lentil soup is primarily grown in Canada.

27. Aksaray employed the plaintiff and other workers who handle goods or materials that have moved or been produced in interstate commerce, like lentils, chickpeas, beef, chicken, eggs, ketchup and many other food products grown, raised or manufactured outside the state of NewYork.

28. All defendants are hereinafter collectively referred to as "defendants."

**FACTS**

29. Plaintiff was paid less than the minimum wage.

30. From August of 2019 to May of 2020, plaintiff was paid a day rate of $90 for 9 hours of work or $10 an hour.

31. From May of 2020 to September of 2021, plaintiff was paid a day rate of $100 for 9 hours of work or $11.11 an hour.

32. From September of 2021 to September 17, 2023, plaintiff was paid a day rate of $120 a day for 9 hours of work or $13.33 an hour.

33. From September 17, 2023 to June 14, 2024, plaintiff was paid a day rate of $130 a day for 9 hours of work or $14.44 an hour.

34. Plaintiff generally worked from Tuesday to Saturday from 11 pm to 8 am the next morning.

35. Sometimes plaintiff had to stay to 11 am when the shift started the next day.

36. When plaintiff worked longer than 10 hours in a shift, she was not paid the spread of hours premium for working longer than 10 hours.

37. During the week of August 28, 2022, plaintiff worked 7 days a week. Exhibit

38. During the week of July 19, 2023, plaintiff worked 7 days from 11 pm to 8 am. Exhibit 2.

39. During the week of January 15, 2023, February 19, 2023, April 19, 2023, June 25, 2023, and December 11, 2023, plaintiff worked 6 days a week from 11 pm to 8 am. Exhibit 2.

40. The FLSA and NYLL allow employers of “food service workers” to pay their tipped employees at a rate below the normal federal and state minimum wages by applying a tip credit towards certain eligible employees’ wages.

41. The FLSA and the NYLL provide that in order to be eligible for this tip credit, employers of tipped employees must inform food service workers about their intention to apply the tip credit towards the employees’ wages and also must allow employees to keep all of the tips that they received.

**AKSARAY KEPT GRATUITIES FROM GUESTS**

42. Defendants collected two different pools of gratuities.

43. The first pool of gratuities was added to the bill and kept by the defendants.

44. The second pool of gratuities was cash gratuities earned by the plaintiff and illegally shared by the kitchen staff.

45. Defendants added 15% percent “gratuity” to the bill of all patrons. Exhibit 1.

46. Defendants collected this money which was labeled "gratuity" on the bill. Exhibit 1.

47. Defendants never gave any portion of this money to the service staff.

48. Defendants kept the entire 15% percent gratuity.

**ADDITIONAL CASH GRATUITIES**

49. Defendants collected plaintiff's additional cash tips above the 15% percent threshold.

49. Defendants required the plaintiff to share her cash tips with the cook/grill person, bread person and the dishwasher. At Aksaray's, the grill/cook would prepare food during his shift. The griller/cooker worked in the grill/kitchen. The bread person would prepare the bread during his shift. The bread person worked in the kitchen. The dishwasher worked in the kitchen cleaning and washing plates.

50. Defendants would place the plaintiff's "cash" tips in a jar to be divided.

51. Cooks/Grill, bread, dishwashers, and other non-service employees are prohibited from sharing in the tips received by the server.

52. The FLSA and NYLL permit employees to participate in a tip pool where tipped employees combine all of their tips together and then redistribute them amongst themselves.

53. At all relevant times, the gratuity on the checks of 15% was entirely taken by the defendants. The additional cash tips received by the plaintiff was split by the defendants between service staff and non-service staff.

54. Defendants additional cash tip pool was arranged so that the plaintiff was required to split her tips with the other staff equally with the following workers receiving an equal share:

a. ¼ to Grill/cook,

b. ¼ to bread maker,

c. ¼ to the dishwasher, and

d. ¼ to the plaintiff.

55. Plaintiff was the only person who contributed to the tip pool.

**AKSARAY'S MAINTAINS AN ILLEGAL TIP POOL**

55. At all times relevant hereto, Defendants refused to give the plaintiff the 15% gratuity added to patron's bills.

56. Defendants established and imposed a cash tip pool upon plaintiff because plaintiff was required to share tips with the non-service workers.

57. By mandating the participation of the grill/cook, bread maker, and dishwasher in the tip pool, defendants have violated both the FLSA and NYLL.

58. Defendants failed to keep track of the plaintiff's tip out to the other staff.

59. The griller/cook, bread maker and dishwasher are non-service personnel.

60. By these and other acts, defendants have taken gratuities belonging to plaintiff and unlawfully diverted them to non-service staff who are not entitled to share in the tip pool at the restaurant, thereby preventing the food service workers from retaining all of the tips left for them in violation of the FLSA and NYLL.

61. Because defendants established an illegal tip pooling scheme at Aksaray, they are not entitled to take advantage of the tip credit and reduce the minimum wages of plaintiff by applying the tip credit allowance that is available under the FLSA and the NYLL.

**AKSARAY VIOLATES THE 80/20 RULE**

62. Defendants violated the FLSA's 80/20 rule by requiring plaintiff to work more than 2 hours or spend 20% of her shift doing work that directly supports work performed by a tipped employee and work that is not part of the tipped occupation.

63. During the week, plaintiff would arrive for her evening shifts at 11:00 pm.

64. During the evening, she was expected to do the work of a porter from 5 am to 8am while the grill was closed.

65. At 5 am the grill would close. The restaurant still served soup and other light meals. Plaintiff was required to do side work for the next 3 hours.

66. Plaintiff did excessive amount of work that was not related to a tip occupation, like cleaning refrigerator, stocking refrigerator with drinks for next day, removing appetizers from refrigerator, go downstair to kitchen and bring up fresh appetizers, mopping the floors, mopping the grill area and kitchen, vacuuming the carpet, breaking down the dining room, washing table, washing chairs, stacking chairs on the table, polishing the glass, walls and mirrors, cleaning windows when glass cleaner does not come, cleaning bathroom sink, toilet, map bathroom floor, removing garbage from bathroom, cleaning the coffee machines and tea pots, and packaging "to go" food in bags and helping the cook/grill.

67. Defendants should have kept track of the time that plaintiff worked doing "side work" and "tip ineligible work."

68. Defendants committed the acts alleged herein knowingly, intentionally, and willfully.

**FIRST CAUSE OF ACTION**
**FLSA – FLSA Overtime Violations, 29 U.S.C. § 201, et seq.**

Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

At all relevant times, defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

At all relevant times, defendants have employed "employee[s]," including Plaintiff.

Plaintiff regularly worked 9 hours a day, 5 or 6 days a week.

Plaintiff worked 45 to 54 hours a week.

Plaintiff was paid a day wage.

Plaintiff was not paid an overtime premium for the 5 hours of overtime she worked each week.

When plaintiff worked 6 days week or 14 hours of overtime, she was not paid the overtime premium for the overtime hours.

Plaintiff was never paid overtime premium.

Throughout the statute of limitations period covered by these claims, defendants failed to pay plaintiff the greater of one and a half times their regular rates for all overtime hours worked.

Plaintiff seeks damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## **SECOND CAUSE OF ACTION**
## **NYLL – Unpaid Minimum Wages**

69. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

70. Defendants are employers within the meaning NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor regulations and employed plaintiff.

71. Defendants were required to pay plaintiff the applicable minimum wage rate under the NYLL.

72. Defendants paid the plaintiff less than the New York minimum wage rate.

73. Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, *inter alia*,

a. Defendants were required to but failed to provide the required tip credit notice under the NYLL,

b. Defendant unlawfully withheld the entire 15% gratuity from the plaintiff,[1] and

c. Defendants unlawfully distributed portions of the cash tips received by plaintiff to employees in positions that do not customarily and regularly receive tips, in violation of the NYLL and its supporting regulations.

74. Defendants were aware of or should have been aware that the practice described in this Complaint were unlawful and did not make a good faith effort to comply with the NYLL with respect to the compensation of plaintiff.

75. As a result of defendants' willful and intentional violations of the NYLL, plaintiff suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the NYLL.

## THIRD CAUSE OF ACTION
## NYLL – Unlawful Tip Deductions

76. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

[1] Upon information and belief, defendants increased the 15% gratuity to 18% while the plaintiff was still working there.

77. NYLL § 196-d prohibits employers or their agents from demanding or accepting directly or indirectly any part of the gratuities received by an employee or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

78. Defendants added a 15% gratuity to all bills and kept the entire amount.

79. Defendants unlawfully retained tips from plaintiff and unlawfully redistributed her tips to non-tip eligible employees like the cook/grill, bread maker and dishwasher.

80. As a result of defendants' willful violations of the NYLL, plaintiff is entitled to recover from defendants her unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**NYLL - Violation of the 80/20 Rule, N.Y. Comp. Codes R. & R. tit. 12 §146-2.9**

81. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

82. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 provides that employer shall not require an employee to work longer than 2 hours or 20% of the day doing non-tipped work.

83. The restaurant closed the grill from 5 am to 8 am.

84. Plaintiff cleaned the restaurant from 5 am to 8 am in the morning.

85. On any day plaintiff spent more than (a) for two hours or more; or (b) for more than twenty percent (20%) of her shift doing side work and tip ineligible work, defendant cannot take a tip credit on that day. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9.

86. Plaintiff's side work and tip ineligible side work exceeded 2 hours a day or 20% of her shifts.

87. As a result of defendants' willful and intentional unlawful conduct, defendants are liable to plaintiff for the tip credit amount for each day that plaintiff worked longer than 2 hours

or 20% of her day doing side work or tip ineligible work, in addition to lost wages, liquidated damages and other damages along with costs and attorneys' fees, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**New York Labor Law-Record Keeping Violations- NYLL § 195(3)**

88. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

89. Defendants failed to make, keep and preserve accurate records with respect to plaintiff, including hours worked each workday, total hours worked each week, overtime hourly rate, and number of overtime hours worked as required by the NYLL and its supporting regulations.

90. Defendants failed to provide plaintiff with accurate wage statements as required by NYLL § 195(3) of the Wage Theft Prevention Act.

91. Defendants failed to issue wage statements. Exhibit 2.

92. Defendants wage statements containing numerous inaccuracies including using a lump sum when it should have included the regular minimum wage, and other violations contrary to the requirements of NYLL § 195(3).

93. Defendants' wage notices incorrectly failed to pay the plaintiff the regular minimum wage, because she were performing non-tip credit eligible work.

94. Defendants' paystubs also did not include off-the-clock work, when plaintiff was forced to work through their unpaid meal breaks; therefore, they did not reflect actual hours worked by plaintiff.

95. This caused the plaintiff to believe she was being paid according to the law and not question her defective wage statements and defendants' unlawful pay practices.

96. Due to defendants' failure to provide accurate wage notices, plaintiff suffered "concrete, downstream injuries," in the form of deprivation of adequate wages, because it prevented plaintiff from discovering that defendants were systematically underpaying her in the form of a "day rate, the incorrect tip credit rate, wrong wage for overtime hours and other violations.

97. Defendants' failure to make, keep and preserve accurate records was willful.

98. As a result of defendants' willful and unlawful conduct, plaintiff is entitled to an award of damages, in an amount to be determined at trial, costs and attorneys' fees, as provided by NYLL § 198.

**SIXTH CAUSE OF ACTION**
**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)- NYLL § 195(1)**

Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

Defendants did not provide plaintiff with wage notice required by N.Y. Lab. Law § 195(1).

Failure to provide a wage notice prevented plaintiff from knowing she was under paid, had she received the wage notice, she would have known sooner she was not being paid the minimum wage and overtime wage.

As a result of defendants' willful and unlawful conduct, plaintiff who was a tipped employee is entitled to an award of damages in amount to be determined at trial and costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully pray that judgment be granted awarding plaintiff:

(a) Compensatory damages;

(b) Unpaid wages;

(c) Disgorgement of tips;

(b) Liquidated damages;

(c) Prejudgment interest;

(d) Damages under NYLL § 198, et.seq.

(e) Attorneys' fees and costs; and

(f) Such other legal and equitable relief as the Court deems necessary and proper.

Dated: September 10, 2024
New York, New York

THE LAW OFFICES OF JEFFREY E. GOLDMAN

By: ___/s/ Jeffrey E. Goldman__________
Jeffrey E. Goldman
260 Madison Ave., 15th Floor.
New York, NY 10016
Phone: 212-983-8999
Fax: 646-693-2289